IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TAYLOR ROSS JACOBS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:24-cv-01186 |
| MIKE FITZHUGH, et al., | ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Taylor Jacobs, a former state inmate,[1] filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) while he was serving his state sentence in custody at the Rutherford County Adult Detention Center (RCADC). He did not pay the civil filing fee, but filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2)

This case is before the Court for ruling on Plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because Plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee, his IFP application (Doc. No. 2) is **GRANTED**.

---

[1] Plaintiff's state sentence expired on March 24, 2025. *See* Tennessee Felony Offender Information Lookup, https://foil.app.tn.gov/foil/details.jsp (last visited Aug. 29, 2025). He provided the Court with timely notice of his change of address. (Doc. No. 9.)

## II. INITIAL REVIEW

**A. Legal Standard**

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2)

that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Factual Allegations**

Plaintiff sues Rutherford County, Tennessee; Rutherford County Sheriff Mike Fitzhugh; the Superintendent for Rutherford County Correctional Work Center, William Cope; the Director of the Rutherford County Recovery Court program, La'Chelle Ricks; the Chief of Operations for RCADC, Kevin Henderson; the "Captain over RCADC," Curtis Little; and a lieutenant at RCADC, Phillip Davis. (Doc. No. 1 at 2–3.) The facts alleged against these Defendants begin with Plaintiff's July 24, 2023 request to be transferred from RCADC to the Rutherford County Correctional Work Center, "a correctional penal facility that houses low-risk prisoners" who are "serving short-term sentences" of six years or less.[2] (*Id.* at 8.) Plaintiff's transfer request was allegedly denied by Defendant Cope in retaliation for having been named a defendant in Plaintiff's 2019 lawsuit, *Jacobs v. Wagner, et al.*, No. 3:19-cv-00238 (M.D. Tenn.).

After the denial of his transfer request, on August 3, 2023, Plaintiff obtained a job as a trustee at RCADC, which allowed him to earn two days of sentence reduction credits for every one day worked. (Doc. No. 1 at 9–10.) He worked that job seven days a week, for nearly four months, until his transfer from RCADC to state prison on November 28, 2023. (*Id.* at 10, 13–14.) On that date, Plaintiff alleges that "RCADC officials initiated a prisoner transfer from RCADC to the Tennessee Department of Corrections ("TDOC") to which Plaintiff was a part of." (*Id.* at 13.) During the months before his transfer, Plaintiff "engaged in multiple forms of protected conduct," including filing "multiple non-frivolous grievances," filing another federal lawsuit (*Jacobs v.*

---

[2] At this point, Plaintiff was serving "three concurrent [one-year] sentences for misdemeanor convictions," with "one [two-year] sentence for a felony conviction to be served consecutively to the misdemeanor sentences." (Doc. No. 1 at 7.)

3

*Rutherford County, et al.*, No. 3:23-cv-00858 (M.D. Tenn.) (filed Aug. 16, 2023)), and submitting a records request in support of a complaint to the U.S. Department of Justice concerning inmate deaths that had occurred at RCADC. (Doc. No. 1 at 10.) He also had been in contact with a mental health liaison about placement in a new drug treatment program after his termination from the Rutherford County Drug Court program, but the liaison's efforts to secure his medical records from the Drug Court program were unsuccessful because Defendant Ricks refused to provide them, in retaliation for being implicated by Plaintiff in Case No. 3:23-cv-00858. (*Id.* at 10–12.)

Plaintiff was housed in state prison from November 28, 2023 until March 25, 2024 (*id.* at 15), when he was returned to RCADC. Plaintiff alleges that his transfer from county jail to state prison in November 2023 was a wrongful act of retaliation motivated by his prior protected conduct. (*Id.* at 13.) However, Plaintiff also acknowledges that, before the November prisoner transfer that he "was a part of," his "misdemeanor sentence expired" and his "felony sentence went into effect" on October 10, 2023. (*Id.* at 12–13.)

Other RCADC trustees with the same sentence lengths as Plaintiff were not transferred to TDOC custody. (*Id.* at 15.) When he was transferred, Plaintiff lost his RCADC trustee position and the accompanying ability to earn sentence reduction credits, resulting in him having to serve 57 days at the end of his sentence that otherwise would not have had to serve. (*Id.* at 14, 15.) Plaintiff also suffered other losses upon moving to state prison, including loss of visitation privileges and attorney consultation time, as well as a changed security classification and resulting altercations with more violent state prisoners. (*Id.* at 14.) Due to these facts, Plaintiff alleges that Rutherford County "has a policy or custom of retaliation for protected conduct and denial of equal protection." (*Id.* at 15.)

4

Case 3:24-cv-01186 Document 11 Filed 09/09/25 Page 4 of 11 PageID #: 66

In a series of motions to amend the Complaint,[3] Plaintiff alleges: (1) that the RCADC has an unwritten policy of attempting to obstruct inmates' attempts to exhaust administrative remedies by refusing to answer inmate grievances, as they did when Plaintiff filed grievances in late 2022 (Doc. No. 5 at 1–2); (2) out of the approximately 20 inmates transferred to TDOC custody on November 28, 2023, Plaintiff was the only one with a sentence of six years or less—all other transferees had sentences of eight years or more (*id.* at 3); (3) Plaintiff's grievances and request for records, for which he claims to have suffered a retaliatory transfer to TDOC custody, include a September 23, 2023 grievance involving access to hot water, grievances on September 25 and 26 involving alleged unsanitary housing conditions, an October 15 grievance concerning an unnamed staff member's "offensive and threatening comments about Plaintiff's sexual orientation" and the need to "stop filing grievances because it was making a corporal angry," an October 19 grievance about a jail policy that conflicted with state law, and a request for incident reports concerning inmate deaths (Doc. No. 6 at 2–4). In his third and final motion to amend, Plaintiff seeks to add as a defendant "administrative/detention sergeant" Ja-Cal Johnson, whose "official duties [include] initiating and coordinating prisoner transfers from RCADC to [TDOC]," and who allegedly initiated Plaintiff's November 28 retaliatory transfer. (Doc. No. 7 at 1–2.)

**C. Analysis**

Plaintiff claims a right to damages under Section 1983 based on two constitutional claims: (1) an equal protection violation under the Fourteenth Amendment (against Defendants Rutherford County, Fitzhugh, Henderson, Little, Davis, and Cope) and (2) retaliation under the First

---

[3] The Court considers the factual allegations of Plaintiff's motions to amend in conducting this initial PLRA review.

Amendment (against the aforementioned Defendants, plus Johnson and Ricks). (Doc. No. 1 at 16; Doc. No. 8.) Neither claim survives initial review under the standards of the PLRA.

1. Equal protection

"The Equal Protection Clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Shabazz v. Schofield*, No. 3:13-cv-00091, 2013 WL 704408, at *19 (M.D. Tenn. Feb. 26, 2013) (quoting U.S. Const., amend. XIV). To adequately plead an equal protection claim, a plaintiff must allege that the government is intentionally treating him differently "as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation and internal quotation marks omitted); *see Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 971 (E.D. Mich. 2016), *aff'd sub nom. Ryan v. City of Detroit, MI*, 698 F. App'x 272 (6th Cir. 2017) ("The Equal Protection Clause prohibits only intentional discrimination.") (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)). "'Similarly situated' is a term of art" requiring a comparator who is "similar in 'all relevant respects'" to the plaintiff. *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Disparate treatment is the *sine qua non* of an equal protection claim. *Glover v. Johnson*, 198 F.3d 557, 561 (6th Cir. 1999) ("Where . . . parity of treatment exists, it is unnecessary to engage in any further analysis."). Dismissal is therefore appropriate where "[t]he allegations contained in the . . . Complaint as to disparate treatment amount to conclusory and unadorned assertions that, consequently, are not well-pleaded, and not entitled to a presumption of truth." *Ctr. for Bio-Ethical Reform*, 648 F.3d at 379. Here, the Complaint alleges that Plaintiff was treated

6

differently than other RCADC trustees who had the same overall sentence length as Plaintiff but were not transferred to TDOC. (Doc. No. 1 at 15; Doc. No. 5 at 3.) However, the Complaint also affirmatively alleges a potentially differentiating factor between Plaintiff and these comparators: "[o]n October 10, 2023, Plaintiff's misdemeanor sentence expired and his felony sentence went into effect." (*Id.* at 12.) Under Tennessee law, "[a] sentence imposed for a misdemeanor offense is to be served in a jail or workhouse, not a Department of Correction facility." *State v. Smith*, 891 S.W.2d 922, 933 (Tenn. Crim. App. 1994); *see also State v. Cavitt*, No. E1999-00304-CCA-R3CD, 2000 WL 964941, at *2 (Tenn. Crim. App. July 13, 2000) (citing *Smith* and amending trial court's judgment sentencing misdemeanant to TDOC to instead "reflect service of the sentence in either the Carter County Jail or workhouse"). The Complaint fails to identify any comparator whose consecutive felony sentence recently took effect as Plaintiff's did, but who was not transferred to TDOC custody. It thus fails to identify a comparator who was similar in all relevant respects to Plaintiff but given more favorable treatment. The conclusory assertion that, because he was transferred to state prison while other trustees were not, "Plaintiff was treated disparately from similarly-situated RCADC inmates" (*id.* at 15) is not well-pleaded and does not support any plausible claim that Plaintiff's equal protection rights were violated. This claim will be dismissed.

    2. Retaliation

Plaintiff claims that his transfer to state prison, Defendant Cope's earlier refusal to transfer him to the Rutherford County Correctional Work Center (CWC), and Defendant Ricks's refusal to facilitate his placement in an alternative treatment program were retaliatory. To establish a claim of First Amendment retaliation, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in

part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999)).

As to the first element, the Complaint simply alleges that Plaintiff "fil[ed] multiple non-frivolous grievances challenging various unconstitutional housing conditions" during a months-long span prior to his transfer. (Doc. No. 1 at 10.) However, one proposed amendment to the Complaint (Doc. No. 6) fleshes out the details of Plaintiff's grievances (filed September 23, 25, and 26, and October 15 and 19, 2023) and records request (filed October 10, 2023) sufficiently to colorably claim their non-frivolousness. Accordingly, for purposes of initial review, the Court finds it plausibly alleged that Plaintiff engaged in protected conduct by filing non-frivolous grievances/requests, *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018), and by filing civil rights actions in this Court against his jailers. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 391). The Court further finds at this early stage that Plaintiff has plausibly alleged adverse action in the form of his unwanted transfer from RCADC to TDOC custody, with the accompanying job loss, increase in restrictions on communication with attorneys and visitation with family, and exposure to more violent inmates.[4] *See Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) ("a transfer to a more restrictive living environment with fewer privileges would deter a person of ordinary firmness from exercising the constitutional right to file [lawsuits or] grievances"); *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005) (prison transfer

---

[4] On the other hand, the denial of the requested transfer from RCADC to CWC without "provid[ing] a reason" (Doc. No. 1 at 8) would not appear to be sufficiently adverse to implicate Plaintiff's constitutional rights. *See generally Carey v. Hillsborough Dep't of Corr.*, No. 05-CV-274-PB, 2005 WL 3544261, at *7 (D.N.H. Dec. 27, 2005) (finding that "refusal to transfer" inmate to "a less restrictive or more amenable facility[] does not rise to the level of a constitutional violation") (citing, *e.g.*, *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Transfers between institutions . . . are made for a variety of reasons and often involve no more than informed predictions as to what would . . . best serve institutional security or the safety and welfare of the inmate"; accordingly, general rule is that such decisions are within the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.")).

accompanied by "a number of foreseeable consequences that inhibited the Plaintiff's ability to access the courts" was sufficiently adverse action); *see also DeFranco v. Wolfe*, 387 F. App'x 147, 157 (3d Cir. 2010) ("we have no doubt that filing a lawsuit is constitutionally protected conduct, and transfer to another facility is sufficiently adverse").

However, Plaintiff's allegations do not plausibly support the claim that his filing of lawsuits and grievances was causally connected to his transfer to TDOC custody. "[C]ausation in retaliatory claims may really be considered a two-part inquiry: A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (citing *Siggers-El*, 412 F.3d at 702, and *Thaddeus-X*, 175 F.3d at 386) (internal quotation marks omitted). Plaintiff alleges that his November 28, 2023 transfer to TDOC custody was initiated by Defendant Johnson and resulted from collusion between Defendants Fitzhugh, Little, Henderson, and Davis, who desired to punish Plaintiff for his protected conduct during September and October 2023. (Doc. No. 1 at 13; Doc. No. 6 at 4; Doc. No. 7 at 2.) But none of these Defendants were involved or implicated in Plaintiff's September/October 2023 grievance filings, which involved unsanitary cell conditions and access to hot water; an unnamed "staff member's offensive and threatening comments about Plaintiff's sexual orientation" and advice "to 'stop filing grievances'" because it was making a different unnamed officer "angry"; and an unidentified facility policy that conflicted with an unidentified state law. (*See* Doc. No. 6 at 2–3.) These Defendants were also not involved in, but only "presumably" notified of, Plaintiff's October 2023 public records request for incident reports involving inmate deaths at RCADC. (*Id.* at 4.) Finally, none of these allegedly colluding Defendants were named in Case No. 3:23-cv-00858, which asserted Plaintiff's rights under the

9

First Amendment's Establishment Clause against Rutherford County, claiming that the County "has an unconstitutional policy or practice of providing inmates who are participating in the county's government-funded Drug Court program with no secular programming options." (Case No. 3:23-cv-00858, Doc. No. 4 at 7.) That case was filed on August 16, 2023, and was settled and dismissed on June 12, 2024. (*Id.*, Doc. Nos. 42, 43.) While there is temporal overlap between the pendency of Plaintiff's case against Rutherford County and his transfer by allegedly colluding officers of the Rutherford County Sheriff's Department on November 28, 2023, the two events involve different parties and are not obviously related. Nor does the Complaint contain any further allegation of fact to support Plaintiff's surmise, "[u]pon information and belief," that he was transferred in response to his litigation activity. (Doc. No. 1 at 13.) Because the Complaint does not support any reasonable inference of causal connection, Plaintiff's retaliatory transfer claim must be dismissed.

Finally, even if it could be said that a materially adverse action was taken against Plaintiff when Defendant Cope refused to approve him for transfer to the Rutherford County CWC, or when Defendant Ricks refused to provide medical records necessary to Plaintiff's search for a new rehabilitative placement, Plaintiff has failed to allege facts suggesting a causal connection between these refusals and the lawsuits that allegedly spawned them. Nor are the facts that he *has* alleged helpful to him. Notably, the four-year gap between Plaintiff's 2019 lawsuit against Cope[5] and Cope's 2023 refusal to approve Plaintiff for transfer is far from being "suspicious temporal proximity." *Maben*, 887 F.3d at 268. As to Ricks, Plaintiff's 2023 lawsuit cannot be connected with his instant Complaint's claim that Ricks refused to provide medical records, as the 2023 action

---

[5] Cope was added as a defendant to the case upon being served with process on September 26, 2019. (Case No. 3:19-cv-00238, Doc. No. 24.) The case was settled on October 1 (*see id.*, Doc. No. 27) and the Court recognized its dismissal on October 7, 2019. (*Id.*, Doc. No. 28.)

first mentioned Ricks as a potential party on November 28, 2023, when Plaintiff filed a motion for leave to amend his complaint in order to add defendants (Case No. 3:23-cv-00858, Doc. No. 20 at 2–3)—*after* Ricks's alleged withholding of Plaintiff's medical records in September of 2023. (Doc. No. 1 at 11–12.)

For these reasons, Plaintiff fails to plead a plausible claim of First Amendment retaliation against any Defendant.

### III. CONCLUSION

For the reasons given above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. In light of this outcome, Plaintiff's pending motions (Doc. Nos. 5, 6, 7, 8) are **DENIED** as moot.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE